## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

LESLIE RAE YOUNG,                )
                                 )
                    Plaintiff,   )         4:10CV3147
                                 )
          v.                     )
                                 )
DAVE HEINEMAN, JON BRUNING,      )         MEMORANDUM AND ORDER
Governor of the State of Nebraska, in )
his official capacity, JOHN A. GALE, )
Secretary of State & Chairperson of the )
Nebraska Real Estate Commission and )
GREG LEMON, Director of the      )
Nebraska Real Estate Commission, in )
their official capacities,       )
                                 )
                    Defendants.  )
                                 )

This matter is before the court on plaintiff Leslie Rae Young's motion for a preliminary injunction, Filing No. 7.  This is a challenge to recent amendments to the Nebraska Real Estate License Act, Neb. Rev. Stat. § 81-885 (2010) ("the Act") under the 14th Amendment and the Commerce Clause of the United States Constitution.  See Filing No. 1, Complaint.  The recent amendments to the Act provide that committing one listed act as a broker is "sufficient contact or activity in the state for the State of Nebraska to exercise personal jurisdiction over unlicensed persons" and enhance the enforcement authority of the Commission, authorizing fines.  Neb. Rev. Stat. § 81-885.03(1) & (2).  The plaintiff seeks an order preliminarily enjoining the defendants from enforcing Neb. Rev. Stat. § 81-885.03(2) against her and, in particular, enjoining the enforcement of a Cease and Desist Order issued on July 20, 2010, that orders her to cease and desist "from any and all conduct that requires a real estate broker's, associate broker's, or salesperson's license in the State of Nebraska."  Jurisdiction is premised on 28 U.S.C. § 1331 and 1343.

On the showing of a colorable challenge to the constitutionality of Neb. Rev. Stat. § 81-885.03, the court entered and later continued a Temporary Restraining Order.  *See* Filing Nos. 23, 33, and 37.  Under the terms of the temporary order, defendants were restrained from taking any further action to enforce Neb. Rev. Stat. § 81-885.03 or the July 20, 2010, Cease and Desist Order against the plaintiff, and the plaintiff was enjoined from adding new Nebraska clients.  *Id.*

At this stage of the proceeding, the issue is whether the State of Nebraska should be enjoined from enforcing the amendments to the statute, which involves an analysis of the State's authority to exercise personal jurisdiction over unlicensed persons who engage in real estate brokering activities.

### I.   Facts

The evidence shows that the plaintiff has posted Nebraska listings on "www.realtor.com" which advertises itself as "Official Site of the National Association of REALTORS," and on "www.forsalebyowner.com."  *See* Filing No. 30, Affidavit of Greg Lemon ("Lemon Aff."), Exhibit (Ex.) 101, Exs. A & B.  The plaintiff is licensed as a real estate broker in California, but not in Nebraska.  *See* Filing No. 12, Index of Evid., Ex. 1, Declaration of Leslie Ray Young ("Young Decl.") at 1.  She owns and operates the Internet website, "www.elist.me."  *Id.*  A Nebraska State Real Estate Commission investigation showed Young was listing Nebraska properties for sale via that website.  Filing No. 30, Lemon Aff. at 3-4.  Such listings stated "Presented by Leslie Young" and contained hyperlinks that allowed the user to e-mail the agent, visit the agent's website and view the agent's other listings.  *Id.* at 1-2.  Realtor.com's Internet site contains certain template language that appears on each advertisement (for example: "email agent," "agent's other

listings," "this listing brokered by") that cannot be altered by the plaintiff.  Filing No. 31, Supplemental Decl. of Leslie Rae Young at 1.  The information about the plaintiff that is included with the advertisement of a home on Realtor.com is obtained by Realtor.com from the data entered into a multi-state listing service ("MLS") of which the plaintiff is a member. *Id.* at 2.  At or near the time of the hearing, the plaintiff had 14 Nebraska clients.  Filing No. 36, Supplemental Decl. of Leslie Rae Young at 1.  The plaintiff contracts with Nebraska residents to list their homes and receives remuneration for doing so.  *Id.* at 2-3.

On March 11, 2010, and July 20, 2010, the Nebraska Real Estate Commission issued cease and desist orders and sent them to Young.  Filing No. 30, Lemon Aff. at 2; Exs. A & B.  The cease and desist orders specifically refer to advertising for sale of real property located in the state of Nebraska.  *Id.*  They also advise the plaintiff that the order would become final in ten days unless she requested a hearing before the Commission, and referred to a civil fine of $1,000.00 per day.  *Id.*

The challenged amendment to the Nebraska Real Estate Licensing Act added language indicating that committing any of the acts listed in the statute under the Act's definition of broker would constitute sufficient contact with the state to confer personal jurisdiction.   The plaintiff argues that the amendment "provides, on its face, a grant of personal jurisdiction that exceeds allowable limitations of the United States Constitution" and that "the jurisdictional language of the statute eliminates required due process, substantial justice, and fair play by stating that one act constitutes sufficient contact with the state of Nebraska for the exercise of personal jurisdiction over out-of-state individual." Filing No. 8, Plaintiff's Brief at 1.   Further, the plaintiff argues that allowing the unconstitutional extension of personal jurisdiction over her will cause her irreparable injury.

3

*Id.* at 3.  She characterizes the jurisdictional amendment as an attempt to skirt the constitutional constraints of the "minimum contacts" rule.  *Id.* at 9.  She also contends that the only remedy available to a person who receives the cease-and-desist order is to request an administrative hearing, which does not allow or provide relief based on a constitutional challenge to the statute, and consequently forego constitutional protections and waive personal jurisdiction challenges.

The State argues that the plaintiff has failed to establish that she is likely to succeed on the merits of her cause of action, that she will suffer irreparable harm without the injunction, or that the balance of harm suffered by plaintiff or the public interest weigh in favor of her position.  It argues that personal jurisdiction may be raised at the administrative hearing and due process safeguards are in place for the protection of both the violator and the Commission.

## II.  Law

### A.  Preliminary Injunction Standards

When evaluating whether to issue a preliminary injunction, a district court should consider four factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); *Roudachevski v. All-American Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011).  A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant.  *Roudachevski*, 648 F.3d at 705.  A preliminary injunction is considered an extraordinary remedy, and the burden of proving each of the

*Dataphase* factors lies with the party seeking the injunction. *Watkins v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

No single factor is determinative, although the failure to demonstrate the threat of irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction. *See Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir.1996); *see also Modern Computer Sys., Inc. v. Modern Banking Sys.*, Inc., 871 F.2d 734, 738 (8th Cir. 1989) (en banc). Before "enjoining the 'implementation of a duly enacted state statute,' a court must 'make a threshold finding that [the movant] is likely to prevail on the merits.'" *Phelps-Roper v. Troutman*, 662 F.3d 485, 488 (8th Cir. 2011) (quoting *Planned Parenthood v. Rounds*, 530 F.3d 724, 733 (8th Cir. 2008)). In such cases, it is only after finding that a party is likely to prevail on the merits that a district court should weigh the other *Dataphase* factors. *Rounds*, 530 F.3d at 732.

In a constitutional challenge to a statute, courts recognize that "if a law is susceptible of a reasonable interpretation which supports its constitutionality, the court must accord the law that meaning." *Jones v. Gale*, 470 F.3d 1261, 1268 (8th Cir. 2006) (quoting *Planned Parenthood of Minn. v. State of Minn.*, 910 F.2d 479, 482 (8th Cir.1990)). Facial challenges to statutes are disfavored "as they 'often rest on speculation' and 'raise the risk of premature interpretation of statutes on the basis of factually barebones records.'" *Roach v. Stouffer*, 560 F.3d 860, 870 n. 5 (8th Cir. 2009) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008)). In a facial challenge, the plaintiff "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Stephens*, 594 F.3d 1033, 1037 (8th Cir. 2010).

The Nebraska Real Estate License Act requires that all persons who act as real estate brokers, as defined therein, in exchange for a fee, must be licensed by the State Real Estate Commission. Neb. Rev. Stat. § 81-885.02; *Ford v. American Med. Int'l, Inc.*, *422 N.W.2d 67, 69 (Neb. 1988)*. The challenged provision of the Act, as amended, provides:

> (1)     Any person who, <u>directly or indirectly</u> for another, with the intention or upon the promise of receiving any form of compensation or consideration, offers, attempts, or agrees to perform or performs <u>any single act</u> described in subdivision (2) of section 81-885.01,[1] whether as a part of a transaction, or as an entire transaction, shall be deemed a broker, associate broker, or salesperson within the meaning of the Nebraska Real Estate License Act, <u>and such action shall constitute sufficient contact with the state for the exercise of personal jurisdiction over such person in any action arising out of such action</u>. Committing a single act described in such subdivision by a person required to be licensed under the Nebraska Real Estate License Act and not so licensed shall constitute a violation of the act for which the commission may impose sanctions pursuant to this section for the protection of the public health, safety, or welfare.

---

[1]That statute defines "broker" as:

any person who, for any form of compensation or consideration or with the intent or expectation of receiving the same from another, negotiates or attempts to negotiate the listing, sale, purchase, exchange, rent, lease, or option for any real estate or improvements thereon, or assists in procuring prospects or holds himself or herself out as a referral agent for the purpose of securing prospects for the listing, sale, purchase, exchange, renting, leasing, or optioning of any real estate or collects rents or attempts to collect rents, gives a broker's price opinion or comparative market analysis, or holds himself or herself out as engaged in any of the foregoing.  Broker also includes any person:

(a) Employed, by or on behalf of the owner or owners of lots or other parcels of real estate, for any form of compensation or consideration to sell such real estate or any part thereof in lots or parcels or make other disposition thereof;

(b) who auctions, offers, attempts, or agrees to auction real estate; or

(c) who buys or offers to buy or sell or otherwise deals in options to buy real estate[.]

Neb. Rev. Stat. § 81-885.01(2).

> (2)   <u>Notwithstanding any other provision of the law to the contrary</u>, the director may issue a cease and desist order against any person who violates this section by performing any action described in subsection (1) of this section without the appropriate license. Such order shall be final ten days after issuance unless the violator requests a hearing pursuant to section 81-885.25.[2]

Neb. Rev. Stat. § 81-885.03 (1) &(2) (amended language underlined).   The Act also authorizes fines of up to $1,000 a day for those who violate a cease-and-desist order and provides for notice and hearing under the Administrative Procedures Act, Neb. Rev. Stat. § 84-901 *et seq*.   Neb. Rev. Stat. § 81-885.03 (3) & (4).   Administrative Procedure Act, Neb. Rev. Stat. §§ 84-901 through 84-920.   An aggrieved party has the right to judicial review of the administrative decision.   Neb. Rev. Stat. § 84-917.

Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions.   *Quality Pork Int'l v. Rupari Food Servs., Inc.,* 675 N.W.2d 642, 648 (2004). The exercise of personal jurisdiction is governed by Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (2008).   That statute provides as follows:

A court may exercise personal jurisdiction over a person:

> (1)   Who acts directly or by an agent, as to a cause of action arising from the person:
>
>> (a)   Transacting any business in this state;
>>
>> (b)   Contracting to supply services or things in this state;
>>
>> (c)   Causing tortious injury by an act or omission in this state;
>>
>> (d)   Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct,

---

[2]Notably, a reference to a "single act" was already in the statute prior to the amendment.

7

> or derives substantial revenue from goods used or consumed or services rendered, in this state;
>
> (e)   Having an interest in, using, or possessing real property in this state; or
>
> (f)   Contracting to insure any person, property, or risk located within this state at the time of contracting; or
>
> (2)   Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

Neb. Rev. Stat. § 25-536 (2008).  By its terms, Nebraska's long-arm statute extends Nebraska's jurisdiction over nonresidents having any contact with or maintaining any relation to this state as far as the United States Constitution permits.  *S.L. ex rel. Susan L. v. Steven L.*, 274 Neb. 646, 742 N.W.2d 734 (Neb. 2007); Neb. Rev. Stat. § 25-536(2). The Legislature intended to provide for the broadest allowable jurisdiction over nonresidents.  *Quality Pork Int'l,* 675 N.W.2d at 648 (noting that the statute is to be interpreted broadly in view of the rationale and philosophy underlying its adoption).

Under Nebraska law, before a court can exercise personal jurisdiction over a nonresident defendant, the court must first determine whether the statutory standard of Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 2008), is satisfied.  *Id*. at 649.  If the long-arm statute has been satisfied, the court must then determine whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process.  *Id.*  Accordingly, a Nebraska court resolving issues of personal jurisdiction would engage in a two-part analysis:  First, the court would determine if, under the Nebraska long-arm statute, there is jurisdiction over the nonresident defendant; and, second, if Nebraska law provides a basis for such jurisdiction,

the court would then decide whether the exercise of personal jurisdiction over the defendant comports with the federal constitutional due process requirements. *Williams v. Gould, Inc.,* 443 N.W.2d 577, 585 (1989).

In order to satisfy the due process clause of the Constitution, a defendant must have "minimum contacts [with the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). The benchmark for determining whether the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there. *S.L. ex. rel Susan L.,* 742 N.W.2d at 741.

The minimum contacts necessary for due process may be the basis for either general or specific jurisdiction. *Pangaea, Inc. v. Flying Burrito LLC,* 647 F.3d 741, 745–46 (8th Cir. 2011); *see also Erickson v. U-Haul Int'l,* 738 N.W.2d 453, 464 (Neb. 2007) (noting that "[a] court exercises two types of personal jurisdiction depending upon the facts and circumstances of the case: general personal jurisdiction or specific personal jurisdiction"). The general jurisdiction of the state's courts can be exercised to allow the state to resolve both matters that originate within the state and those based on activities and events elsewhere when there are circumstances or a course of conduct from which it is proper to infer an intention to benefit from and thus an intention to submit to the laws of the forum, such as explicit consent, presence within a state at the time suit commences through service of process, or citizenship, domicile, or incorporation or principal place of business for corporations. *J. McIntyre Mach., Ltd. v. Nicastro,* — U.S. —, —, 131 S. Ct. 2780, 2787

9

(2011) (plurality opinion); *see also* Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–15 & n. 9 (1984) (stating that general jurisdiction arises when a defendant's contacts with the forum state are so "continuous and systematic" that the defendant may be subject to suit there even for causes of action that are distinct from the in-state activities); Erickson, 738 N.W.2d at 464 (to satisfy general personal jurisdiction, the plaintiff's claim does not have to arise directly out of the defendant's contacts with the forum state if the defendant has engaged in continuous and systematic general business contacts with the forum state).

Specific jurisdiction is a more limited form of submission to a state's authority for "disputes that 'arise out of or are connected with the activities within the state.'" J. McIntyre Mach., — U.S. at —, 131 S. Ct. at 2787. Specific jurisdiction is conferred where a defendant "purposefully avails itself of the privilege of conducting activities within the forum State" and thereby "submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State." *Id.* at 2787–88 (stating "[i]n other words, submission through contact with and activity directed at a sovereign may justify specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum") (internal quotation omitted); Quality Pork Int'l, 675 N.W.2d at 650-51 (noting that if the defendant's contacts are neither substantial nor continuous and systematic, but the cause of action arises out of or is related to the defendant's contacts with the forum state, a court may assert specific personal jurisdiction over the defendant depending on the quality and nature of the defendant's contacts). The purposeful availment or purposeful direction requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random,

fortuitous, or attenuated contacts. *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693–94 (8th Cir. 2003) (citations omitted).

Nebraska courts interpret the purposeful availment requirement as involving an analysis of whether the party "purposefully directed its activities or consummated some transaction with Nebraska or its residents; or performed some act by which it purposefully availed itself of the privilege of conducting activities in Nebraska, thereby invoking the benefits and protections of its laws." *Freeburg v. International Port Servs., Inc.,* 2009 WL 416070, *6 (Neb. Ct. App. 2009).* A single act of availment can, in some circumstances suffice to establish specific personal jurisdiction over a nonresident defendant. *Burger King v. Rudzewicz,* 471 U.S. 462, 476 n. 18 (1985) (holding that even a "single act" by the defendant can support jurisdiction, but only if that act creates a "substantial connection" with the forum). Other Nebraska statutes utilize similar "single act" jurisdictional language. *See, e.g.*, Neb. Rev. Stat. § 44-2004. Numerous other states base violations of licensing statutes and premise personal jurisdiction on "single acts" performed without a license. *See, e.g., Idaho Code Ann*. § 54-2002; 225 Ill. Comp. Stat. §§ 453/20-10, 454/20-15; Iowa Code §§ 454B.6, 454B.34; Filing No. 39 Supplemental Index, Ex. 102.

In evaluating the question of whether activities on generally accessible Web-based platforms should subject a defendant to specific personal jurisdiction, the Eighth Circuit has adopted the analytical framework of *Zippo Mfg. Co. v. Zippo Dot Com, Inc*., 952 F. Supp. 1119, 1124 (W.D. Pa.1997). *Lakin v. Prudential Sec., Inc*., 348 F.3d 704, 711 (8th Cir. 2003) (apply sliding scale approach). To determine whether a defendant's Web site subjects the defendant to specific personal jurisdiction, the Eighth Circuit Court applies the following analysis:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet.  If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.  At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.  A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction.  The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer.  In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Lakin*, 348 F.3d at 710–11 (quoting *Zippo Manufacturing Co.*, 952 F. Supp. at 1124;

*Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010)  (noting that the scale runs from

active contract formation and repeated transmission of computer files to mere posting of

information on a Web site).  Under *Zippo*, whether specific personal jurisdiction could be

conferred on the basis of an interactive Web site depends not just on the nature of the

Web site but also on evidence that individuals in the forum state accessed the Web site

in doing business with the defendant. *Johnson*, 614 F.3d at 797.

Nebraska law provides that before filing any other pleading or motion, one may file

a special appearance for the sole purpose of objecting to a court's assertion or exercise

of personal jurisdiction over the objector. *Quality Pork Int'l*, 675 N.W.2d at 648; Neb. Rev.

Stat. § 25-516.01.  A party appearing before an agency or tribunal in an adjudication

hearing is entitled to due process and that due process requires, among other things, an

opportunity to present evidence and a hearing before an impartial board. *Geringer v. City

of Omaha*, 468 N.W.2d 372, 377 (Neb. 1991).

### III.  Discussion

The court finds the plaintiff has not shown probability of success on the merits. Given a reasonable interpretation, the amended Act does not extend personal jurisdiction beyond constitutional limits.   The statute does not conclusively establish personal jurisdiction.  Jurisdiction over nonresidents is conferred by the state's long-arm statute and remains subject to due process "minimum contacts" constraints.  The amendment to the Real Estate License Act does no more than identify certain broker-type activities, involving property in Nebraska, that qualify as "contacts" for purposes of the exercise of personal jurisdiction.  The listed activities found in the Real Estate License Act arguably fall under the purview of the long-arm statute's existing provisions covering claims "arising from the person:  (a)  Transacting any business in this state;  (b) Contracting to supply services or things in this state, or having an interest in, using, or possessing real property in the state." Neb. Rev. Stat. §25–536(a), (b), and (e).

The language added to the Act comes into play in connection with establishing the first prong of the two-prong test for personal jurisdiction, determining the coverage of the long-arm statute, i.e., whether Nebraska law provides a basis for jurisdiction.  A tribunal's exercise of personal jurisdiction is still subject to the constitutional due process requirement that subjecting a nonresident to the authority of Nebraska tribunals must not offend notions of substantial justice and fair play, triggering the "minimum contacts" analysis. Constitutional due process analysis is highly fact-dependent and must be determined on a case-by-case basis, depending on the nature of the contact.  The statute does not prohibit application of the constitutional minimum-contacts test.  The plaintiff's argument that it is fundamentally unfair to require her to appear at a hearing in this state to argue the

alleged lack of "minimum contacts" could be made in every challenge to personal jurisdiction.

Contrary to plaintiff's contention, a nonresident defendant is free to challenge jurisdiction by entering a special appearance. The Act provides that a person who receives a cease-and-desist order has ten days to request a hearing. If the nonresident requests a hearing, he or she has an opportunity to appear in person or by counsel before the Commission. Nothing precludes the entry of a special appearance at the administrative level. The nonresident further has the right to judicial review of that proceeding, including the personal jurisdiction issue. The Real Estate Licensing Act has remedies that ensure due process.

The plaintiff's argument that forcing a person to submit to personal jurisdiction based on one activity, transaction, or incident renders § 81-885.03 unconstitutional is also misplaced. Personal jurisdiction can be based on a single act in certain circumstances. The court need not address those circumstances or whether the plaintiff's conduct would qualify as such at this stage of the proceedings. Let it suffice to say that the evidence before the court shows only that a facial challenge to the amendment is unlikely to succeed. The court expresses no opinion on an "as-applied" challenge.

Having found that the plaintiff is unlikely to succeed on the merits, the court finds the motion for a preliminary injunction should be denied. The court need not address the remaining dataphase factors, but notes that they also favor the defendants. It does not appear that irreparable harm will befall the plaintiff, since she has an adequate remedy at law in the form of monetary damages. The public interest weighs in favor of the defendants since Nebraska has a significant interest in regulating the sale of real property

14

within its border, and the balance of harms weighs in favor of the defendants for the same

reason.  Accordingly,

IT IS HEREBY ORDERED:

1.  The plaintiff's motion of a preliminary injunction ( Filing No. 7) is denied.

2.  The temporary restraining order (Filing No. 37) is dissolved.

3.  The defendants shall answer or otherwise plead within 14 days of the date of this

order.

DATED this 30th day of March, 2012.

BY THE COURT:


s/ Joseph F. Bataillon
U.S. District Court Judge