FILED
US DISTRICT COURT
DISTRICT OF NEBRASKA

NOV 1 4 2014

OFFICE OF THE CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LESLIE YOUNG, | ) | |
| Plaintiff, | ) | Case No. 4:10-cv-03147-JFB-TDT |
| v. | ) | |
| | ) | **ORDER ON FINAL** |
| DAVE HEINEMAN, et al., | ) | **PRETRIAL CONFERENCE** |
| Defendants. | ) | |
| | ) | |

A final pretrial conference was held on the 14th day of November, 2014. Appearing for the parties as counsel were: Anastasia Boden, esq., for Plaintiff, and Christopher Heinrich and Adam Prochaska for Defendants.

(A)   **Exhibits**.  *See* attached Plaintiff's *List of Exhibits* and Defendants' *Exhibit List.*

(B)   **Uncontroverted Facts**.   The parties have agreed that the following may be accepted as established facts for purposes of this case only:

1.   Plaintiff Leslie Young ("Young") owns a business called eList.me, which she operates out of her home in Volcano, California.

2.   Young holds a California real estate broker license

3.   The website Forsalebyowner.com allows individuals who want to sell their homes to advertise their properties online.

4.   Property owners who want to sell their home can use their computers to go to the Forsalebyowner.com website and buy from that company a "package" of services.  When they purchase the "MLS Entry Only Showcase" package, they are provided with links to download documents, including a contract, a disclosure form, and an information questionnaire which asks for information about the house that the property owner wishes to sell, such as asking price, square footage, and digital photos.

5.   Property owners who want to sell their home via Foresalebyowner.com then sign and return the contract and the requested information electronically—either by email or fax.

6.   Typically, property owners who sell their home via Forsalebyowner.com never meet Young in person.

7. Young's contracts with property owners and the disclosures she provides them use the words "broker" and/or "agent," and she signed her direct email communication to her customers as "Leslie Young, Broker."

8. Young entered into nearly thirty (30) contracts with Nebraska residents.

9. Young uses an MLS based in California.

10. This California MLS only allows licensed real estate brokers to input data into it.

11. Young only had access to Realtor.com because Plaintiff is a California-licensed real estate broker.

12. Young only had access to the MLS system because she is a California-licensed real estate broker.

13. Young does not receive percentage-based commissions.

14. Young is paid a flat $95 fee for each property that she provides services for—and she is paid regardless of whether the property sells or not.

15. Once Young inputs the information she receives about a property into the MLS, websites such as Realtor.com connect to that MLS and others, and display the information contained in the MLSs in the form of new webpages on their websites.

16. Forsalebyowner.com and Realtor.com enable prospective buyers to search for homes based on size, location, price, etc. The search results will then include webpages for homes that Young has entered into the MLS.

17. Young does not have control over certain banner advertisements that may appear at the top and on the margins of the website Realtor.com. These banner advertisements may be totally unrelated to real estate.

18. At the seller's option, the telephone number that Ms. Young inputs into the MLS either automatically connects to the seller's phone, or plays an automated recording that provides the seller's phone number. Young inputs into the database only the seller's telephone number and email address, not her own.

19. Young unilaterally changed the listing content of at least one customer, telling the customer that the customer's wording was a "Great Lure!" Her customer then replied "Looks better, thanks for the blinking 'Great Location, Great Value" . . . I like it . . . sell baby sell!!" Young manipulated the Realtor.com listing; she did not simply transfer the customer's request onto Realtor.com.

20. Young told one Nebraska property owner: "When buyers write or call for information, most do not have agents representing them. You will want to contact the buyer

quickly BEFORE THEY HIRE a local agent to represent them. This gives the seller an opportunity to sell their property without paying a commission to the buyer's broker. But there are up-to-date Agents who also use Realtor.com. This is because Realtor.com is the official website of the National Association of Realtors. If agents are telling you that you are not in your local MLS...then they know about your property. They also know where they can look to get more information about your property. And they know how to talk to you to bring you a buyer. There is nothing to stop them from bringing you a buyer. In this case, you may not need a local MLS listing."

21.     Young provided her customers with a compact disc that contained computerized templates for fliers that property owners could fill out and distribute, a glossary of real estate terms, and other information about selling real property.

22.     On March 11, 2010, and again on July 20, 2010, the Commission issued Young a Cease and Desist Order, on the grounds that she was engaged in the practice of real estate brokerage without a license.

23.     The July 20, 2010 Cease and Desist Order advised Young, among other things, to "cease and desist from any and all conduct which requires a real estate broker's, associate broker's, or salesperson's license in the State of Nebraska." It also advised Young that the Order became final within ten (10) days unless she requested a hearing and that "if the commission makes a finding of guilt, the commission may impose a fine."

24.     Young did not appeal the Cease and Desist Orders to the Commission as provided in Neb. Rev. Stat. §§ 81-885.25 to 81-885.30. Instead, on July 29, 2010, nine (9) days after the Commission issued the July 20, 2010 Cease and Desist Order, Plaintiff brought suit in this Court, pursuant to the Fourteenth Amendment of the United States Constitution, the Commerce Clause, and 42 U.S.C. § 1983, attacking the constitutionality of Neb. Rev. Stat. § 81-885.03, which became effective on July 15, 2010.

25.     On July 29, 2010, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction Order seeking to enjoin Defendants from enforcing Neb. Rev. Stat. § 81-885.03 and the July 20, 2010 Cease and Desist Order. See Doc. No. 7. The crux of Plaintiff's initial Complaint was that Neb. Rev. Stat. § 81-885.03 was an unconstitutional extension of the state's jurisdiction and a violation of the federal "minimum contacts" test because it allowed the State of Nebraska to exercise personal jurisdiction over an out-of-state individual based on "one act" as a broker.

26.     After extensive briefing, this Court determined that Plaintiff was "unlikely to succeed on the merits" of her claims and denied Plaintiff's Motion for a Preliminary Injunction. Specifically, the Court held that "a facial challenge to the amendment is unlikely to succeed." Young's response to the March 30, 2012 decision was to abandon her jurisdictional challenge and raise a variety of "facial" and "as applied" challenges alleging the deprivation of rights secured by the First Amendment and the Due Process, Equal Protection, and Privileges or Immunities Clauses of the Fourteenth Amendment.

27.     Young contends that she seeks only "prospective relief" and has never disputed that her actions do constitute unlicensed activity in Nebraska.

28.     The actions taken by Young which underlie the two Cease and Desist Orders issued by the Commission are the same that she wishes to engage in in the future.

(C)   **Controverted and Unresolved Issues**.  The issues remaining to be determined and unresolved matters for the court's attention are:

1.     Whether the contractual relationship between Young and her customers or clients constitutes a "fiduciary" relationship.

2.     Whether Young's case is barred because Young failed to exhaust administrative remedies.

3.     Whether the challenged statute violates the First Amendment of the United States Constitution because it impermissibly burdens protected expression.

4.     Whether the challenged statute violates the First Amendment of the United States Constitution because it constitutes a prior restraint on constitutionally protected speech.

5.     Whether Plaintiff's activities are protected by the First Amendment.

6.     Whether the challenged laws are content- and speaker-neutral.

7.     Whether the challenged laws regulate commercial speech.

8.     Whether the challenged statute is unconstitutionally overbroad.

9.     Whether the challenged statute is not overbroad because Young's activity is not protected by the First Amendment and because the statute does not burden a substantial amount of protected speech.

10.     Whether the statute is unconstitutionally vague because it lacks definitions for crucial terms and provides no guidance to enforcement officials.

11.     Whether the statute is not facially vague because Ms. Young's conduct falls within a readable understanding of the statute and the statute could only cause minimal confusion about its application.

12.     Whether Young's speech is unlawful because it cannot be made without first obtaining a license, and therefore, it is unprotected.

13.     Whether the statute violates the Fourteenth Amendment by requiring Young to obtain a real estate brokerage license before engaging in her trade.

*[Handwritten annotation:]* Plaintiff requests Uncontroverted Facts — see attached 1 - through 60. Defendant as facts agreed to by both parties on the motion for summary judgment. Plaintiff now will object to stated facts and requests the differences in Plaintiff and court adopts defendant version be left to trial. Plaintiff's enumerated defendant's version. See attached

14.     Whether Nebraska's licensing requirement bears a rational relationship to the protection of the public health, safety, or welfare.

15.     Whether Young is engaged in the unlicensed practice of real estate brokerage.

16.     Whether Nebraska law requires individuals similarly situated to Young to obtain a real estate broker's license.

17.     Whether the Privileges or Immunities Clause protects Young's activity.

(D)     **Witnesses**. All witnesses, including rebuttal witnesses, expected to be called to testify by plaintiff, except those who may be called for impeachment purposes as defined in NECivR 16.2(c) only, are:

> Leslie Young
> 19991 Pine Drive West
> Volcano, CA  95689
>
> Greg Lemon
> 1200 N Street, Suite 402
> P.O. Box 94667Lincoln, NE 68509-4667

All witnesses expected to be called to testify by defendant, except those who may be called for impeachment purposes as defined in NECivR 16.2(c) only, are:

> Same.

(E)     **Expert Witnesses' Qualifications**.   Experts to be called by plaintiff and their qualifications are:

> None.

(F)     **Voir Dire**.

> N/A

(G)     **Number of Jurors**.

> N/A

(H)     **Verdict**.

> N/A

(I)     **Briefs, Instructions, and Proposed Findings**.   Counsel have reviewed NECivR 39.2(a), 51.1(a), and 52.1, and suggest the following schedule for filing trial briefs and proposed

e

findings of fact, as applicable: Trial briefs and proposed findings of fact shall be filed December 10, 2014, which is five (5) working days before the first day of trial.

(J)     **Length of Trial**.  Counsel estimate the length of trial will consume not less than 1 day, not more than 2 days, and probably about 1 day(s).

(K)     **Trial Date**.  Trial is set for December 15, 2014.

Dated this ⊓ day of November, 2014.

LESLIE YOUNG, Plaintiff

By:

TIMOTHY SANDEFUR*
Cal. State Bar No. 224436
ANASTASIA BODEN*
Cal. State Bar No. 281911

Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone:  (916) 419-7111
Facsimile:  (916) 419-7747
E-mail:  tsandefur@pacificlegal.org

PERRY ANDREW PIRSCH, No. 21525
Berry Law Firm, PC
2650 North 48th Street
P.O. Box 4554
Lincoln, NE  68504
Telephone:  (402) 466-8444
Facsimile:  (402) 466-1793
E-Mail:  Perry@jsberrylaw.com

e

Dated this 14th day of November, 2014.

DAVE HEINEMAN, in his official capacity as the Governor of Nebraska; JON BRUNING, in his official capacity as the Attorney General of Nebraska; JOHN GALE, in his official capacity as Chairperson of the Nebraska Real Estate Commission; GREG LEMON, Director of the Nebraska Real Estate Commission, in his official capacity; AL AVERY, DREW STANGE, VINCENT LEISEY, ROBERT DOVER, KATHRYN ROUCH, and DAVID PTAK, in their official capacities as members of the Nebraska Real Estate Commission

By: _____

    HARDING & SHULTZ, P.C., L.L.O. and
    CHRISTOPHER R. HEINRICH – 20521
    ADAM J. PROCHASKA -22307
    Special Assistant Attorneys General
    800 Lincoln Square
    121 South 13th Street
    P.O. Box 82028
    Lincoln, Nebraska 68501-2028
    402-434-3000

Dated this 14th day of November, 2014.

BY THE COURT:

_____

Honorable Thomas D. Thalken
United States Magistrate Judge

569/56/137/ Pretrial Order Defendants Final

Cir. 2000) (A dispute of fact "is not 'genuine' unless the evidence is such that a reasonable trier

of fact could return a verdict for the nonmoving party."). The Commission "must present

affirmative evidence," *Cooper*, 634 F.3d at 480, that controverts facts stated in the motions for

summary judgment, and the disputes must "[have] a real basis in the record." *Rawlings v. Iowa*

*Dep't of Human Servs.*, 820 F. Supp. 423, 425 n.1 (S.D. Iowa 1993). Defendants have not

identified any basis in the record for controverting any of the material facts as stated herein or in

the cross-motions for summary judgment. Thus there is no genuine dispute as to any material

fact stated herein for purposes of either summary judgment or for trial. *See* Local Rule 56.1(1)

(uncontroverted facts "are considered admitted.").

      (A)    **Exhibits**. *See* attached Plaintiff's *List of Exhibits* and Defendants' *Exhibit List.*

      (B)    **Uncontroverted Facts:**

Plaintiff's Statement of Uncontroverted Facts:

    1.    Leslie Young owns a business called eList.me, which she operates out of her

California home, and which offers advertising services to people who wish to sell their homes on

an FSBO basis.

    2.    Although she holds a California real estate broker license, Ms. Young does not

work as a real estate broker, but only as an advertiser.

    3.    In 2008, Ms. Young contracted with Forsalebyowner.com, a business owned by

the *Chicago Tribune*, to provide advertising services for FSBO sellers.

    4.    Interested FSBO sellers use their computers to go to the Forsalebyowner.com

website and buy from that company a "package" of services. When they purchase the "MLS

Entry Only Showcase" package, they are provided with links to download documents, including

an advertisement contract, a disclosure form, and an information questionnaire which asks for

information about the house that the FSBO seller wishes to sell, such as asking price, square footage, and digital photos. California-licensed brokers are required to provide a disclosure form to any seller before inputting a property into an MLS, regardless of whether the ad is for an FSBO sale or a traditional, brokered sale.

5. FSBO sellers sign and return the contract and the requested information electronically—either by email or fax—and do not ever meet Ms. Young in person.

6. Ms. Young uses contracts based on form contracts originally designed for brokerage services, but which Ms. Young altered as follows: her form advertising contract states in clear, boldfaced type that it does not create a principal-agent relationship with the FSBO seller. It states "Non-Exclusive Authorization to Advertise through the MLS For Realtor.com Showcase." It also states, in boldface:

**THIS AGREEMENT IS FOR AN MLS ENTRY LISTING ONLY for the sole purpose of advertising. Broker does not perform real estate services outside the State of California. Broker is performing data entry into the MLS system. NO OTHER CONTRACT, FIDUCIARY RELATIONSHIP, AND/OR OBLIGATION IS BEING CREATED HEREIN.**

7. The contract specifies that Ms. Young "is not agreeing to find or obtain a Buyer for the purchase of Seller's Property and that the only service provided by it are those listed herein."

8. Ms. Young added these provisions to ensure that FSBO sellers understood that she was not providing anything more than advertising services.

9. Once the FSBO seller signs the contract and submits the information sheet, Forsalebyowner.com forwards the information to Ms. Young, who uploads this information into

a database called a Multiple Listing Service (MLS). Ms. Young uses an MLS based in California. California law allows a person with a California real estate license (which Ms. Young has) to place information about available property into an MLS, regardless of where it is located, and to promote the sale of property on an FSBO basis.

10.     Ms. Young does on occasion correspond with FSBO sellers regarding their advertisements—answering questions about their ads, or ensuring that the information that appears in the ads is correct.

11.     Ms. Young does not serve in any fiduciary capacity, and there is no evidence that any seller has ever thought that she was serving in any such capacity.

12.     Ms. Young does not receive commissions. She is paid a flat $95 fee per ad for inputting information into the computer database—and she is paid regardless of whether the property sells or not. She is not paid directly by the sellers, but is paid by the *Chicago Tribune*, owner of Forsalebyowner.com.

13.     Ms. Young does not show homes. She does not negotiate terms of purchase and sale. She does not arrange or attend meetings between sellers and buyers. She does not answer questions about properties for sale. She does not advise buyers or sellers on negotiations. There is no evidence that she ever offered to provide any of these services. She does not handle earnest money or any other client funds other than the flat fee transmitted to her through Forsalebyowner.com.

14.     Once Ms. Young inputs the information she receives about an FSBO property into the MLS, websites such as Realtor.com connect to that MLS and others, and display the information contained in the MLSes in the form of advertisements.

- 4 -

15.    These websites enable prospective buyers to search for homes based on size, location, price, etc. The search results will then include ads for FSBO homes that Ms. Young has entered into the MLS.

16.    Ms. Young has only very limited control over how these websites display the information that comes from an MLS. As a result, different websites display information about Ms. Young's FSBO customers in different ways, adding or subtracting material that the website template itself provides. For example, Forsalebyowner.com and Realtor.com sometime display banner advertisements at the top and on the margins of advertisements that are totally unrelated to real estate. Advertisements for properties of Ms. Young's FSBO customers have therefore appeared next to advertisements for (to take one example, cosmetic Botox injections). FSBO sellers have sometimes complained about this, but Ms. Young has no control over these "template" parts of the displays.

17.    Ms. Young also cannot control the appearance of terms such as "Presented By," "This Listing is Brokered By," or "View Agent's Other Listings," on the Realtor.com template, so that when Realtor.com displays an ad for one of Ms. Young's FSBO customers, the words "Presented By" appear next to her name (which is drawn from her MLS entry); the phrase "This Listing Is Brokered By" appears above "eList.me"; and "Agent's Other Listings" automatically indexes any other advertisements drawn from her MLS entries. Likewise, the phrase "Email Agent," appears as a clickable weblink that connects to whatever email address Ms. Young provides.

18.    In an effort to avoid confusion, Ms. Young entered her name in the "Presented By" field as "Leslie Young, Advertising Broker" or "Leslie Young, Real Estate Advertising

- 5 -

Services," to alert readers that she was acting solely as an advertiser and not as a traditional broker.

19.     At the seller's option, the telephone number appearing in Ms. Young's FSBO ads either automatically connects to the FSBO seller's phone, or plays an automated recording that provides the seller's phone number. In no case can a prospective buyer obtain Ms. Young's email address or telephone number.

20.     Ms. Young inputs into the database only the FSBO seller's telephone number and email address, not her own.

21.     For example, one of Ms. Young's FSBO ads was for property located on Leon Drive in Lincoln. The telephone number provided in the ad was (877) 353-5478 ext. 8192. A person dialing that number would either be automatically connected to the FSBO seller's telephone, or would hear an automated recording that recited only the FSBO seller's telephone number.

22.     Ms. Young does not speak with prospective buyers, and they have no way of contacting her.

23.     Ms. Young's ads are labeled "eList.me," the web address of her business. The eList.me website prominently displays the words "Advertising Services," and states: "We provide advertising for Seller's [sic] and their Attorneys in fact, Attorneys at law and their local licensed agent or broker." It states at the bottom: "We are a Leading Online Advertiser providing UNSURPASSED internet exposure!"

24.     Ms. Young took these steps to distinguish her FSBO ads from ads for traditional, agent-listed properties, and to ensure that buyers and sellers understood that she provided only advertising services and was not operating as a real estate broker. There is no evidence that any

- 6 -

member of the general public ever believed, or that Ms. Young ever tried to make anyone believe, that she was offering real estate brokerage services.

25. Ms. Young has never claimed to be a Nebraska real estate broker, or offered to serve as a broker, show homes, negotiate sales, or serve in any fiduciary capacity with regard to Nebraska properties. Her contracts specifically disclaim that she will do so.

26. Indeed, she has no desire to do so, and has no interest in working as a real estate broker in Nebraska, California, or any other state. She is solely in the business of transmitting information—specifically, entering information into databases used by websites that publish information about homes for sale, in the form of advertisements to the public.

27. Since 2005, the Commission has issued at least 14 Cease and Desist Orders to persons who have advertised real estate for sale in Nebraska. The Commission issues about five to ten such Orders per year. Commission Director Greg Lemon has sole discretion to issue these Orders himself, when in his opinion a person has engaged in unlicensed brokerage. No other established procedure is involved.

28. In 2007, an attorney asked the Commission if he could advertise FSBO property and then draft purchase agreements in his capacity as an attorney. The Commission answered no, because "[u]nder the plan you are proposing, customers would be solicited through advertising . . . . The [statute] . . . would be violated because the advertising done at your website is not done under the supervision of [a licensee]." It further stated that "[t]he marketing of properties" and "advertising . . . property for sale" required a real estate broker license.

29. In 2009, the Commission issued several Cease and Desist Orders to Carl Wuestehube on the grounds that he was "advertising Nebraska real estate for sale . . . without . . . a Nebraska real estate license," and warned him to cease "any and all conduct which requires

a . . . license . . . includ[ing] . . . advertising the Nebraska real estate for sale in any form or media."

30. In 2011, the Commission held a disciplinary hearing regarding Carl Wuestehube. This is the only disciplinary hearing it has held in the past five years. At that hearing, Special Assistant Attorney General Ekeler argued that "even if the seller chose to do a for-sale-by-owner service, [Wuestehube's] service still includes a listing service agreement," and therefore "required a Nebraska license." Special Assistant Attorney General Barton stated that "even if [Wuestehube's service] was just limited to, like, doing an MLS listing for the Nebraska property . . . [he's] getting paid for that, and the statute says if you receive any compensation for marketing real estate for sale, that's brokerage services under Nebraska law." Commissioner Barton further stated that "even if you hold yourself as being willing" to place a property into an MLS, including FSBO property, "you're offering real estate brokerage services." Commissioner Dover stated that Wuestehube was "facilitating the sale of the property, and I believe he's not allowed to do that without a Nebraska real estate license." The Commission ultimately found Wuestehube liable because he had "held himself out" as a broker.

31. In later legal proceedings against Wuestehube, the Commission contended that he had violated the statute because he "clearly and unequivocally advertise[d] that [he] [would] advertise properties on the website Realtor.com" and that he "caused those listings to appear." The Commission contended that Wuestehube violated the statute even if he "never received a commission for the sale," because "the only material question [was] whether Wuestehube 'attempt[ed] to negogtiate the listing . . . or assist[ed] in procuring prospects or [held] himself . . . out as a referral agent." A state court later held that for procedural reasons, it was unnecessary to resolve the question of whether Wuestehube's advertisements violated the statute.

- 8 -

32.     In 2009, the Commission issued a Cease and Desist Order to the Real Estate

Disposition Company for "advertising Nebraska real estate for auction," and ordered it to cease

"negotiating . . . Listing Agreements with owners of Nebraska real estate," or "advertising the

Nebraska real estate for sale on Auction.com."

33.     In 2010, the Commission issued a Cease and Desist Order to All Around Home

Finders on the grounds that it was engaged in "procuring prospects" without a license. The basis

for this Order was a website listing homes for rent.

34.     In 2010, the Commission issued a Cease and Desist Order to John Fothergill on

the grounds that "advertising for sale . . . real property located in the State of Nebraska" required

a license and ordered him to "remov[e] all advertising for sale of such Nebraska properties from

the Internet and other forms of communication to the public," on pain of "criminal prosecution."

35.     In 2011, the Commission issued a Cease and Desist Order to Jack Keller on the

grounds that he was "assisting in the procurement of a buyer." The basis for this Order was an

advertisement by Mr. Keller on Realtor.com.

36.     In 2011, the Commission issued a Cease and Desist Order to Lawrence Bunnell.

Mr. Bunnell objected that his company only "provide[d] online classified advertising services to

'for sale by owner' property sellers." Director Lemon replied that Bunnell's firm was

nevertheless "holding itself out" as a broker because the website included the phrases "Presented

by bloomkey.com," included a telephone number, and because the website was affiliated with

Realtor.com. Director Lemon further stated that "[i]f you were to assist someone in putting their

home on Craigslist or the Omaha World Herald without having your companies [sic] name and

number listed on the materials," the Commission "would have no interest or jurisdiction over

your activities."

- 9 -

37. In 2012, the Commission issued a Cease and Desist Order to Owners.com, on the grounds that it was engaged in "procuring prospects." Owners.com responded that it was engaged only in FSBO advertising, not brokerage services, and that it paid Nebraska-licensed brokers to upload information about FSBO properties into an MLS. Director Lemon replied that paying a broker to upload information into an MLS constituted "assisting in the procurement of prospects." Owners.com answered that it was "an advertising website for for-sale-by-owner property sellers," and "was not [paid] . . . to sell . . . properties." Director Lemon answered, "based upon our review of the website and the information you have provided the issue is 'assisting in the procurement of prospects for the listing of real estate.'"

38. On March 11, 2010, and again on July 20, 2010, the Commission issued Young a Cease and Desist Order, on the grounds that she was engaged in the practice of real estate brokerage without a license.

39. The March 11 Order stated that Ms. Young was "advertising for sale, real property located in the State of Nebraska on www.ForSaleByOwner.com . . . without having first secured a Nebraska real estate broker license," and included printouts of FSBO ads from that website. None of these ads included the word "broker," or Ms. Young's contact information.

40. The July 20 Cease and Desist Order stated that Ms. Young "continue[d] to advertise for sale, real property in the State of Nebraska on Realtor.com, without having first secured a Nebraska real estate broker license," and included printouts of FSBO ads from that site.

41. A Cease and Desist Order requires the recipient to cease engaging in unlicensed brokerage on pain of civil and criminal penalties, and becomes final 10 days after issuance.

- 10 -

42. Ms. Young is now legally barred from assisting Nebraska homeowners in publishing FSBO ads on the internet. Were she to do so, she would be subject to civil and criminal penalties up to and including incarceration.

43. The Commission contends that Ms. Young "holds herself out" as a broker because the words "advertising broker," "view agent's other listings," "email agent," and "presented by Elist.me," appeared on Realtor.com advertisements drawn from her data entries.

44. On March 26, 2010, Director Lemon stated in a letter to Ms. Young's former attorney that "[o]n the Nebraska property in question Ms. Young is listed as the broker on the website as well as showing her 'presenting' property . . . and listing her contact information . . . . It logically follows from this that Ms. Young is holding herself out as the broker for the sale of the Nebraska real estate in question here."

45. Director Lemon testified that the Commission issued Ms. Young the cease and desist order solely on the basis of the content of her advertisements.

46. Director Lemon testified that he had no reason to believe that any information in her advertisements was inaccurate, or erroneous. The Commission received no consumer complaints about Ms. Young.

47. To obtain a brokerage license, a person must have a high school diploma or equivalent, and must (a) complete 18 credit hours in subjects related to real estate at an accredited college, or (b) complete 180 class hours in a Commission-approved real estate course, or (c) must have served as a licensed real estate sales person or broker for two years and complete 120 hours of Commission-approved class study. All applicants must also take and pass a Commission-approved written exam "covering generally the matters confronting real estate brokers," and undergo fingerprinting and a criminal background check.

48.     A sample Commission-approved educational coursebook, consists of three parts: (1) the source of the Board's authority to promulgate the Rules and Regulations that govern licensees, *id.* at NREC00105-108; (2) the licensing requirements and what licensees are authorized to do, *id.* at NREC00109-147; and (3) agency relationships.

49.     The coursebook is 66 pages long.  Advertising homes is mentioned on a total of 7 pages.  None of these refers to FSBO advertising.  The practice exam and two tests provided by the Commission in discovery together total 91 questions, of which two relate to advertising homes that are for sale.

50.     The overwhelming majority of the course teaches licensed brokers skills necessary to represent buyers or sellers in the transfer of property.  For example, the course discusses negotiating the terms of sale, preparing and relaying offers, handling client funds, keeping a trust account, closing escrow, and maintaining proper paperwork.

51.     With regard to advertising, the course teaches only that:  (1) licensees must include their business names in all of their advertisements; (2) licensees must disclose that they are licensed when they advertise property that they personally own; (3) licensees may not advertise a property without the consent of the owner; and (4) brokers may not publish intentionally misleading ads.

52.     Director Lemon was identified by defendants, and testified pursuant to Fed. R. Civ. P. 30(b)(6), as the Person Most Knowledgeable regarding the licensing requirements.  His answers must therefore be taken as those of the Commission.

53.     Director Lemon testified that the Commission decides at its monthly meetings whether certain activities would qualify as brokerage.  It relies on no written guidelines when deciding whether a purported violation constitutes the practice of real estate brokerage.

- 12 -

54. Director Lemon testified that "procuring prospects" means: "Helping somebody find a potential purchaser or potential lessor of property, specifically assisting—you know, perhaps calling or—or talking to people, saying, 'I have this property for sale you may be interested in.'" He testified that a person would be "procuring prospects" if she accepted money in exchange for calling a friend or emailing her work colleagues to tell them that her neighbor's house is for sale.

55. Director Lemon defined "procuring prospects" as "active[] one-on-one contact, you know, targeted individual mailings" of advertisements, and as "[h]elping somebody find a potential purchaser . . . you know, perhaps calling or—or talking to people, saying, 'I have this property for sale you may be interested in.'"

56. Director Lemon defined "negotiating a listing" as "Negotiate the listing would be to go to a potential seller and discuss the terms under which they would assist someone in selling property," and said "negotiating a listing" "would occur between the person desiring to transfer their property in some way."

57. Director Lemon testified that the term "listing" "refers to a situation where a real estate broker has a contract to assist someone in the sale of property or lease." Asked to differentiate between a listing and the type of advertisement for which a license would not be required, he testified: "Well, I don't—a listing is what I—I—I just explained to you as being. An advertisement is information about some service or good being offered."

58. No statute, regulation, or court decision defines the terms "procure prospects," "negotiate a listing," or "hold oneself out." The Commission is not aware of any written guidelines that define these terms. The Commission decides whether a person's conduct

- 13 -

qualifies as brokerage at its disciplinary hearings.  It has no guidance other than the statute itself in making that determination.

59.      Director Lemon testified that the Commission requires a person to undertake educational and licensing requirements before advertising real estate because, among other things, "there might be general dangers of misrepresentation if somebody doesn't understand how to measure square feet or—or that type of thing, a misrepresentation; although we allow owners to–to represent themselves in the sale of property, but there—there certainly could be danger or some sort of misrepresentation because of limited knowledge of—of how to represent real estate."

60.      Director Lemon also testified:  "One of the things a licensee would learn about in their classes is—is conforming and nonconforming bedrooms . . . .  Many times a house may have a bedroom in a basement that doesn't have proper egress in case of a fire or emergency; so a person without a license that wasn't aware of that might advertise something as being a bedroom."  He testified that it was not dangerous for an advertiser to post an advertisement if she receives the content of the ad directly from the owner.

Defendants' Statement of Uncontroverted Facts

1.      Plaintiff is a resident of Volcano, California.

2.      Plaintiff is licensed as a real estate broker in the State of California but not in Nebraska.

3.      On March 11, 2010, Greg Lemon, as the Director of the Nebraska Real Estate Commission (hereafter the "Commission"), issued Plaintiff a cease and desist order (hereafter the "March 11, 2011 C&D Order"), which advised her to "cease and desist from any and all conduct

- 14 -

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEBRASKA

| | |
|---|---|
| LESLIE RAE YOUNG, | ) |
| | ) |
| Plaintiff, | )     LIST OF EXHIBITS |
| | ) |
| v. | ) |
| | )     Case Number: 4:10-cv-03147-JFB-TDT |
| DAVE HEINEMAN, et al., | )     Courtroom Deputy: |
| | )     Court Reporter: |
| Defendants. | ) |

Trial Date(s): during the week of December 15, 2014

| EXHIBIT NO. | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| PLF | DF | 3 PTY | DESCRIPTION | OFF | OBJ | RCVD | NOT RCVD | DATE |
| 1 | | | Declaration of Leslie Young in Support of Plaintiff's Motion for Summary Judgment | | R, H, 0 confrontation best evidence Foundation | | | |
| 2 | | | Contract with customer Daniel Halm | | none | ✓ | | |
| 3 | | | Cease and Desist Order and accompanying documents from Nebraska Real Estate Commission to Leslie Young, March 11, 2010 | | none | ✓ | | |
| 4 | | | Cease and Desist Order and accompanying documents from Nebraska Real Estate Commission to Leslie Young, July 20, 2010 | | none | ✓ | | |
| 5 | | | Printout of webpage, Elist.me | | none | ✓ | | |
| 6 | | | Letter from Greg Lemon to attorney Jeffrey J. Blumel, March 26, 2010 | | none | ✓ | | |
| 7 | | | Declaration of Anastasia P. Boden in Support of Plaintiff's Motion for Summary Judgment | | R, H, 0 confrontation Best evidence Foundation | | | |

| 8 | | | Transcript of deposition of Greg Lemon | H, O FR.CP 32 404 (a)(b) | | | |
| 9 | | | Cease and Desist Order from Nebraska Real Estate Commission to Steve Udelson and Owners.com, March 9, 2012 | R, H, D 404(a)(b) | | | |
| 10 | | | Email from Steve Udelson to Greg Lemon, March 20, 2012 | R, H, o 404(a)+(b) | | | |
| 11 | | | Email from Greg Lemon to Steve Udelson, March 27, 2012 | R, H, o 404(a)-(b) | | | |
| 12 | | | Email from Steve Udelson to Greg Lemon, March 27, 2012 | R, H, o 404(a)-(b) | | | |
| 13 | | | Email from Greg Lemon to Steve Udelson, March 29, 2012 | R, H, o 404 (a)-(b) | | | |
| 14 | | | Cease and Desist Order from Nebraska Real Estate Commission to All Around Home Finders, November 12, 2010 | R, H, O 404 (a)-(b) | | | |
| 15 | | | Cease and Desist Order from Nebraska Real Estate Commission to Jack Keller, April 7, 2011 | R, H, o 404(a)-(b) | | | |
| 16 | | | Cease and Desist Order from Nebraska Real Estate Commission to Real Estate Disposition Company, August 31, 2009 | R, H, o 404(a)-(b) | | | |
| 17 | | | Cease and Desist Order and accompanying documents from Nebraska Real Estate Commission to John Fothergill, March 11, 2010 | R, H, o 404 (a)-(b) | | | |

| | | | | | |
|---|---|---|---|---|---|
| 18 | | | Cease and Desist Order and accompanying documents from Nebraska Real Estate Commission to Lawrence Bunnell, June 29, 2011 | R,H,O<br><br>404(a)-(b) | | |
| 19 | | | Letter from Lawrence Bunnell to Greg Lemon, July 7, 2011 | R,H,O<br>404(a)-(b) | | |
| 20 | | | Letter from Greg Lemon to Lawrence Bunnell, July 12, 2011 | R,H,O<br>404(a)-(b) | | |
| 21 | | | Letter from Nebraska Real Estate Commission to Kirk Meisinger, esq., April 13, 2007 | R,H,O<br><br>404(a)-(b) | | |
| 22 | | | Cease and Desist Order from Nebraska Real Estate Commission to Carl Wusetehube, dated August 18, 2009 | R,H,O<br><br>404(a)-(b) | | |
| 23 | | | Cease and Desist Order and accompanying documents from Nebraska Real Estate Commission to Carl Wusetehube, September 28, 2009 | R,H,O<br><br>404(a)-(b) | | |
| 24 | | | Cease and Desist Order and accompanying documents from Nebraska Real Estate Commission to Carl Wusetehube, November 4, 2009 | R,H,O<br><br>404(a)-(b) | | |
| 25 | | | Reply Brief In Support of Motion for Summary Judgment in *Nebraska v. Wuestehube*, No. CI 11-3714 (Neb. Dist. Ct. Apr. 24, 2012) | R,H,O<br><br>404(a)-(b) | | |
| 26 | | | Court's Order in *Nebraska v. Wuestehube*, No. CI 11-3714 (Neb. Dist. Ct. Apr. 24, 2012) | R,H,O<br>404(a)-(b) | | |

| 27 | | | Transcript of Hearing for Carl Wuestehube, May 19, 2011 | R,H,0 404(a)-(b) | | |
| 28 | | | Order dismissing Petition for Review | R,H,0 404(a)-(b) | | |
| 29 | | | Cease and Desist Order and accompanying documents from Nebraska Real Estate Commission to Ray Pittman, August 1, 2013 | R,H,0 904(a),(b) | | |
| 30 | | | Cease and Desist Order from Nebraska Real Estate Commission to Patrick McGannon, August 1, 2013 | R,HO 404(a)-(b) | | |
| 31 | | | Cease and Desist Order from Nebraska Real Estate Commission to Robert Hunter, August 1, 2013 | R,H,0 904(a)-(b) | | |
| 32 | | | Commission-approved home study exam for applicants for a real estate broker license | R | | |
| 33 | | | Commission-approved course materials for applicants for a real estate broker license | R | | |
| 34 | | | Declaration of Timothy Sandefur, Esq. in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment | R,H,0 confrontation best evidence foundation | | |
| 35 | | | Excerpts from transcript of deposition of Greg Lemon | R,H,0 | | |
| 36 | | | Letter from Greg Lemon to Carl Wuestehube, April 11, 2011 | R,H,0 404(a)-(b) | | |

| 37 | | | Exchange of emails between Plaintiff Leslie Young and Jeff Berggren | | R,H,o 404(a)(b) | | |
| 38 | | | Declaration of Timothy Sandefur in Support of Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment | | R,H,o confrontation best evidence foundation | | |
| 39 | | | Deposition of Leslie Young | | H,o Fdcp3L 404 (o) - (b) | | |

**OBJECTIONS**

R: Relevancy
H: Hearsay
A: Authenticity
O: Other (specify)

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Adam J. Prochaska          aprochaska@hslegalfirm.com, srhynalds@hslegalfirm.com
Anastasia P. Boden          apb@pacificlegal.org, incominglit@pacificlegal.org
Christopher R. Heinrich     cheinrich@hslegalfirm.com, tbell@hslegalfirm.com
Perry A. Pirsch             perry@jsberrylaw.com
Timothy M. Sandefur        tsandefur@pacificlegal.org, bas@pacificlegal.org, IncomingLit@pacificlegal.org

I also served the foregoing by U.S. mail to:

CHRISTOPHER R. HEINRICH
ADAM J. PROCHASKA
Harding & Shultz, P.C., L.L.O.
800 Lincoln Square
121 South 13th Street
P.O. Box 82028
Lincoln, NE 68501-2028

_____ s/ Anastasia P. Boden _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

LESLIE RAE YOUNG, )
)
)
Plaintiff, )
)
Case No. 4:10-CV-3147
)
vs. )
)
)
DAVE HEINEMAN, Governor of the State )        **EXHIBIT LIST**
of Nebraska, in his official capacity JON )
BRUNING, Attorney General of Nebraska, )
in his official capacity; JOHN A. GALE, )
Secretary of State & Chairperson of the )
Nebraska Real Estate Commission and )
GREG LEMON, Director of the Nebraska )
Real Estate Commission, in their official )
capacities, )

Defendants.

Defendants, by and through their counsel of record, hereby submit the following

Exhibits they may offer at the time of Trial:     Subject to offer —

| EX. NO. | | DESCRIPTION | OFFER | OBJ* | REC'D | NOT REC'D | DATE |
|---------|-----|-------------|-------|------|-------|-----------|------|
| PL | DF | | | | | | |
| | 1. | C&D Order dated March 11, 2010 (w/ attachments) (17 pages) | | | | | |
| | 2. | NREC Investigative Materials re: March 11, 2010 C&D Order (59 pages) (NREC001 – NREC0059) | | | | | |

**OBJECTIONS\***
M = Materiality
R = Relevancy
H = Hearsay
F = Foundation
O = Others

1

| EX. NO. | | DESCRIPTION | OFFER | OBJ* | REC'D | NOT REC'D | DATE |
|---|---|---|---|---|---|---|---|
| PL | DF | | | | | | |
| | 3. | C&D Order dated July 20, 2010 (w/ attachments) (29 pages) | | | | | |
| | 4. | NREC Investigative Materials re: July 20, 2010 C&D Order (31 pages) (NREC0060 – NREC0090) | | | | | |
| | 5. | MLS Services Agreement (28 pages) | | | | | |
| | 6. | Property Agency Listing Agreement (7 pages) | | | | | |
| | 7. | Disclosure Regarding Real Estate Agency Relationship (2 pages) | | | | | |
| | 8. | Public Health and Miscellaneous Subjects Committee Statement (10 pages) | | | | | |
| | 9. | August 11, 2014 screenshot of eList.me (1 page) | | | | | |
| | 10. | August 11, 2014 screenshot of the "Contact" page of eList.me (1 page) | | | | | |
| | 11. | August 11, 2014 screenshot of the "Contact Us" page of elistate.com (1 page) | | | | | |
| | 12. | 2005 C&D Orders (NREC00695-699) (5 pages) | | | | | |
| | 13. | 2006 C&D Orders (NREC00700-707) (8 pages) | | | | | |
| | 14. | 2008 C&D Orders (NREC00708-717) (10 pages) | | | | | |

## OBJECTIONS*
M = Materiality
R = Relevancy
H = Hearsay
F = Foundation
O = Others

2

| EX. NO. | | DESCRIPTION | OFFER | OBJ* | REC'D | NOT REC'D | DATE |
|---|---|---|---|---|---|---|---|
| PL | DF | | | | | | |
| | 15. | 2009 C&D Orders (NREC00718-737) (20 pages) | | | | | |
| | 16. | 2010 C&D Orders (NREC00738-807) (71 pages) | | | | | |
| | 17. | 2011 C&D Orders (NREC00808-838) (31 pages) | | | | | |
| | 18. | 2012 C&D Orders (NREC00839-1007) (169 pages) | | | | | |
| | 19. | 2013 C&D Orders (NREC001008-1146) (139 pages) | | | | | |
| | 20. | 2014 C&D Orders (NREC001147-1161) (15 pages) | | | | | |
| | 21. | C&D 2005-001 (3 pages) (NREC001162-001164) | | | | | |
| | 22. | C&D 2005-002 (7 pages) (NREC001165-001171) | | | | | |
| | 23. | C&D 2005-004 (68 pages) (NREC001172-001239) | | | | | |
| | 24. | C&D 2006-001 (16 pages) (NREC001240-001255) | | | | | |
| | 25. | C&D 2009-004 (904 pages) (NREC001256-002159) | | | | | |
| | 26. | C&D 2010-003 (30 pages) (NREC002160-002189) | | | | | |
| | 27. | Documents related to C&D 2010-008 (66 pages) (NREC002190-002255) | | | | | |

**OBJECTIONS\***
M = Materiality
R = Relevancy
H = Hearsay
F = Foundation
O = Others

3

| EX. NO. | | DESCRIPTION | OFFER | OBJ* | REC'D | NOT REC'D | DATE |
|---|---|---|---|---|---|---|---|
| PL | DF | | | | | | |
| | 28. | Documents related to C&D 2011-002 (10 pages) (NREC002256-002265) | | | | | |
| | 29. | Documents related to C&D 2011-004 (16 pages) (NREC002266-002281) | | | | | |
| | 30. | Documents related to C&D 2012-003 (173 pages) (NREC002282-002454) | | | | | |
| | 31. | Documents related to C&D 2012-014 (70 pages) (NREC002455-002524) | | | | | |
| | 32. | Nebraska Real Estate License Act and Rules and Regulations (199 pages) (NREC002526-2724) | | | | | |
| | 33. | Training Materials (80 pages) (NREC0091-00170) | | | | | |
| | 34. | Licensure Recognition in Nebraska (1 page) (NREC00171) | | | | | |
| | 35. | FAQ for Real Estate Applicants (6 pages) (NREC00172-00177) | | | | | |
| | 36. | Application Instructions Nonresident Licensure (4 pages) (NREC00178-00181) | | | | | |
| | 37. | Three Clock-Hour Course Required (1 page) (NREC00183) | | | | | |
| | 38. | Application Instructions Nonresident Licensure (4 pages) (NREC00184-NREC00187) | | | | | |
| | 39. | Application for License As a Real Estate Salesperson (11 pages) (NREC00188- | | | | | |

**OBJECTIONS\***

M = Materiality
R = Relevancy
H = Hearsay
F = Foundation
O = Others

4

| EX. NO. | | DESCRIPTION | OFFER | OBJ* | REC'D | NOT REC'D | DATE |
|---|---|---|---|---|---|---|---|
| PL | DF | | | | | | |
| | | NREC00198) | | | | | |
| | 40. | Nebraska Fair Housing Act (10 pages) (NREC00199-NREC00208) | | | | | |
| | 41. | Halm Documents (11 pages) | | | | | |
| | 42. | Campbell Documents (16 pages) | | | | | |
| | 43. | Wright Documents (18 pages) | | | | | |
| | 44. | Morris Documents (16 pages) | | | | | |
| | 45. | Kendall Documents (17 pages) | | | | | |
| | 46. | Phinney Documents including Email Plaintiff received from Chad and Suzanne Phinney (20 pages) | | | | | |
| | 47. | DeDominici Documents (15 pages) | | | | | |
| | 48. | Jones Documents (16 pages) | | | | | |
| | 49. | Holstein Documents (24 pages) | | | | | |
| | 50. | Mussman Documents (18 pages) | | | | | |
| | 51. | Siebert Documents (14 pages) | | | | | |
| | 52. | Zimmer Documents incliding Email exchange between Plaintiff and Mary Zimmer (33 pages) | | | | | |
| | 53. | Russell Documents (21 pages) | | | | | |

**OBJECTIONS\***
M = Materiality
R = Relevancy
H = Hearsay
F = Foundation
O = Others

| EX. NO. | | DESCRIPTION | OFFER | OBJ* | REC'D | NOT REC'D | DATE |
|---|---|---|---|---|---|---|---|
| PL | DF | | | | | | |
| | 54. | Berggren Documents including Email exchange between Plaintiff and Jeff Berggren (27 pages) | | | | | |
| | 55. | Parker Documents (24 pages) | | | | | |
| | 56. | Gruher Documents (16 pages) | | | | | |
| | 57. | Swanson Documents including Email exchange between Plaintiff and Linda Swanson, (18 pages) | | | | | |
| | 58. | Sorensen Documents (13 pages) | | | | | |
| | 59. | Sieler Documents (18 pages) | | | | | |
| | 60. | Leake Documents (23 pages) | | | | | |
| | 61. | Massey Documents (21 pages) | | | | | |
| | 62. | Stephens Documents (12 pages) | | | | | |
| | 63. | Matya Documents (16 pages) | | | | | |
| | 64. | Stara Documents (38 pages) | | | | | |
| | 65. | Mushlitz Documents (19 pages) | | | | | |
| | 66. | Swanson Documents (15 pages) | | | | | |
| | 67. | Geise Documents including Email exchange between Plaintiff and Susan Geise (42 pages) | | | | | |
| | 68. | Rhonda Documents (58 pages) | | | | | |

**OBJECTIONS\***
M = Materiality
R = Relevancy
H = Hearsay
F = Foundation
O = Others

6

| EX. NO. | | DESCRIPTION | OFFER | OBJ* | REC'D | NOT REC'D | DATE |
|---|---|---|---|---|---|---|---|
| PL | DF | | | | | | |
| | 69. | July 28, 2010 Declaration of Leslie Rae Young (28 pages) | | | | | |
| | 70. | August 9, 2010 Supplemental Declaration of Leslie Rae Young (3 pages) | | | | | |
| | 71. | July 30, 2014 Declaration of Leslie Young in Support of Plaintiff's Motion for Summary Judgment (8 pages) | | | | | |
| | 72. | Plaintiff's Responses to Defendants' Requests for Admissions, Set One dated April 2, 2014 (17 pages) | | | | | |
| | 73. | Plaintiff's Responses to Defendants' Interrogatories, Set One dated April 2, 2014 (32 pages) | | | | | |
| | 74. | July 28, 2014 Plaintiff's Responses to Defendants' Requests for Production of Documents, Set Two (14 pages) | | | | | |
| | 75. | MLS Listing Report (1 page) | | | | | |
| | 76. | Realtor.com Printouts (34 pages) | | | | | |
| | 77. | May 3, 2013 letter from Sandefur to Heinrich (3 pages) | | | | | |
| | 78. | May 13, 2013 letter from Heinrich to Sandefur (1 page) | | | | | |
| | 79. | Any exhibits listed by the Plaintiff | | | | | |

Defendants' reserve the right to amend this list.

## OBJECTIONS*
M = Materiality
R = Relevancy
H = Hearsay
F = Foundation
O = Others