IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LESLIE RAE YOUNG, | |
| Plaintiff, | **4:10CV3147** |
| vs. | **MEMORANDUM AND ORDER** |
| PETE RICKETTS, Governor of the State of Nebraska, in his official capacity; DOUG PETERSON, Attorney General of Nebraska, in his official capacity; JOHN A. GALE, Secretary of State & Chairperson of the Nebraska Real Estate Commission, in their official capacities; GREG LEMON, Director of the Nebraska Real Estate Commission, in their official capacities; AL AVERY, in their official capacities as members of the Nebraska Real Estate Commission; DREW STANGE, in their official capacities as members of the Nebraska Real Estate Commission; VINCENT LEISEY, in their official capacities as members of the Nebraska Real Estate Commission; ROBERT DOVER, in their official capacities as members of the Nebraska Real Estate Commission; KATHRYN ROUCH, in their official capacities as members of the Nebraska Real Estate Commission; and DAVID PTAK, in their official capacities as members of the Nebraska Real Estate Commission; | |
| Defendants. | |

This matter is before the Court on defendants' motion for summary judgment, Filing No. 151, and plaintiff's motion for summary judgment and request for hearing, Filing No. 153 and Filing No. 156. The Parties have agreed that this case can be submitted for final judgment, based on the summary judgment motions, the pleadings and the supporting evidence. See Filing No. 168. Plaintiff filed this lawsuit alleging her First and Fourteenth Amendment rights are violated by the licensing requirements of

Neb. Rev. Stat. § 81-885.01(2) and 299 Neb. Admin Code § 2-004.[1] The court is only asked to address the constitutionality of the statute in question and to find prospective injunctive relief in this case.

**BACKGROUND**

This case involves a challenge to recent amendments to the Nebraska Real Estate License Act, Neb. Rev. Stat. § 81-885 (2010) ("the Act") under 42 U.S.C. § 1983. Plaintiff says the Act violates her Free Speech, Due Process, Equal Protection, and Privileges or Immunities Clause rights under the First and the Fourteenth Amendments of the United States Constitution. See Filing No. 91, First Amended Complaint. Defendants Pete Ricketts in his official capacity as the Governor of Nebraska; Doug Peterson, in his official capacity as the Attorney General of Nebraska; John Gale, in his official capacity as Chairperson of the Nebraska Real Estate Commission; Greg Lemon, Director of the Nebraska Real Estate Commission, in his official capacity; Al Avery, Drew Strange, Vincent Leisey, Robert Dover, Kathryn Rouch, and David Ptak, in their official capacities as members of the Nebraska Real Estate Commission (hereafter collectively "the defendants"), move for summary judgment pursuant to Fed. R. Civ. P. 56.

The court made the following factual summary in its preliminary order on the request for injunction, and the facts are not substantially different for purposes of this motion:

---

[1] This section states: "A broker shall not advertise to sell, buy, exchange, rent, or lease real property in a manner indicating that the offer to sell, buy, exchange, rent, or lease such real property is being made by a private party not engaged in the real estate business, and no advertisement shall be inserted in any publication where only a post office box number, telephone number, or street address appears."

The evidence shows that the plaintiff has posted Nebraska listings on Awww.realtor.com@ which advertises itself as the Official Site of the National Association of REALTORS, and on www.forsalebyowner.com. See Filing No. 30 at pp. 3-56. Affidavit of Greg Lemon ("Lemon Aff."), Exhibit (Ex.) 1, Exs. A & B. The plaintiff is licensed as a real estate broker in California, but not in Nebraska. See Filing No. 12-1, Index of Evid., Ex. 1, Declaration of Leslie Ray Young ("Young Decl."). She owns and operates the Internet website, "www.elist.me." Id. A Nebraska State Real Estate Commission investigation showed Young was listing Nebraska properties for sale via that website. Filing No. 30, Lemon Aff. at 3-4, and attachments. Such listings stated "Presented by Leslie Young" and contained hyperlinks that allowed the user to e-mail the agent, visit the agent's website and view the agent's other listings. Id. at 1-2. Realtor.com's Internet site contains certain template language that appears on each advertisement (for example: "email agent," "agent's other listings," "this listing brokered by") that cannot be altered by the plaintiff. Filing No. 31 at p.3, Supplemental Decl. of Leslie Rae Young. The information about the plaintiff that is included with the advertisement of a home on Realtor.com is obtained by Realtor.com from the data entered into a multi-state listing service ("MLS") of which the plaintiff is a member. Id.. At or near the time of the hearing, the plaintiff had 14 Nebraska clients. Filing No. 36 at p.1, Supplemental Decl. of Leslie Rae Young. The plaintiff contracts with Nebraska residents to list their homes and receives remuneration for doing so. Id. at 1-2.

On March 11, 2010, and July 20, 2010, the Nebraska Real Estate Commission issued cease and desist orders and sent them to Young. Filing No. 30 at p.3, Lemon Aff.; Exs. A & B. The cease and desist orders specifically refer to advertising for sale of real property located in the state of Nebraska. Id. They also advise the plaintiff that the order would become final in ten days unless she requested a hearing before the Commission, and referred to a civil fine of $1,000.00 per day. Id.

The challenged amendment to the Nebraska Real Estate Licensing Act added language indicating that committing any of the acts listed in the statute under the Act's definition of broker would constitute sufficient contact with the state to confer personal jurisdiction.... She also contends that the only remedy available to a person who receives the cease-and-desist order is to request an administrative hearing, which does not allow or provide relief based on a constitutional challenge to the statute, and consequently forego constitutional protections and waive personal jurisdiction challenges.

Memorandum and Order, Filing No. 55, at 2-4.

Plaintiff is a resident of Volcano, California.... The plaintiff's listings include pictures and descriptions of various Nebraska properties, and plaintiff is listed as an "advertising broker" and as a "listing broker."

> Plaintiff agrees that she assists persons who wish to sell their properties on a "for sale by owner" basis without using a real estate agent. She assists with preparation of advertisements and puts these ads in a computer program which sends the ads to the Internet websites that publish them. She argues she does not negotiate prices, show homes, counsel the buyers or sellers, or interact with the homebuyers directly. She does not receive a commission for the sale. She is paid a flat fee for her advertising services, regardless of whether a home sells or not.
>
> ….
>
> In this lawsuit, plaintiff requests prospective relief only. She does not ask this court to address any of the previously decided issues but only to stop the prosecution of her under the Nebraska statute. She argues this is a prior restraint and is a content-based restriction on her free speech rights and the law subjects her to civil and criminal penalties. Further, she alleges that her equal protection rights are violated, as she is unable to engage in Internet advertising, but newspapers, radio and television advertisers, publishing "for sale by owner" advertisements, are permitted to do so. Finally, she contends this violates the privileges and immunities clause by barring her from engaging in her chosen profession.

Filing No. 102, at 3-4, Memorandum and Order.

The plaintiff initially filed a motion for a temporary restraining order.   Filing No. 7. The Court granted the motion, and the Court later granted an amended temporary restraining order and second amended restraining order.   Filing No. 23, Filing No. 33 and Filing No. 37.   Subsequently, the Court issued a memorandum and order denying plaintiff's motion for a preliminary injunction and dissolved the temporary restraining order.   Filing No. 55. Defendant then filed a motion to dismiss, Filing No. 94, which this Court denied, finding that it would abstain from deciding the case until such time as the state action was completed.   Filing No. 102.   The plaintiff thereafter moved to lift the stay.   The Court lifted the stay finding that the State of Nebraska had fully addressed it at that point.   Filing No. 110.   Defendants then moved to dismiss again, Filing No. 112, and this Court denied the same.   Filing No. 118.

**STANDARD OF REVIEW**

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] …. which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042, (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A "genuine" issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 251-52 (1986) (noting the inquiry is whether the evidence presents a sufficient disagreement to require submission to a

5

jury or whether it is so one-sided that one party must prevail as a matter of law).  If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted.  *Id.* at 251.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences.  *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).  "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations."  *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."  *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

A filing of cross-motions for summary judgment does not "necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits."  *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983).  Consequently, "[w]here conflicting inferences as to a material fact may reasonably be drawn from the materials before the court, the case is not appropriate for summary judgment."  *Id.*

**DISCUSSION**

*A.   Administrative Exhaustion*

Defendants again argue that Plaintiff failed to exhaust her administrative remedies in the State of Nebraska.   The Court previously denied this claim, Filing No. 110 and Filing No. 118.   The Court reviewed the current request by the defendants and finds there is no new evidence for review.   Accordingly, the Court denies this part of the motion on the basis of its previous orders.

6

## B.  Constitutional Issues

Under the License Act, a "broker" is defined in relevant part as follows:
Broker means any person who, for any form of compensation or consideration or with the intent or expectation of receiving the same from another, negotiates or attempts to negotiate the listing, sale, purchase, exchange, rent, lease, or option for any real estate or improvements thereon, or assists in procuring prospects or holds himself or herself out as a referral agent for the purpose of securing prospects for the listing, sale, purchase, exchange, renting, leasing, or optioning of any real estate or collects rents or attempts to collect rents, gives a broker's price opinion or comparative market analysis, or holds himself or herself out as engaged in any of the foregoing.

NEB. REV. STAT. § 81-885.01(2).

The challenged provision of the Act, as amended, provides:

(1) Any person who, directly or indirectly for another, with the intention or upon the promise of receiving any form of compensation or consideration, offers, attempts, or agrees to perform or performs any single act described in subdivision (2) of section 81-885.01, whether as a part of a transaction, or as an entire transaction, shall be deemed a broker, associate broker, or salesperson within the meaning of the Nebraska Real Estate License Act, and such action shall constitute sufficient contact with the state for the exercise of personal jurisdiction over such person in any action arising out of such action. Committing a single act described in such subdivision by a person required to be licensed under the Nebraska Real Estate License Act and not so licensed shall constitute a violation of the act for which the commission may impose sanctions pursuant to this section for the protection of the public health, safety, or welfare.

(2) Notwithstanding any other provision of the law to the contrary, the director may issue a cease and desist order against any person who violates this section by performing any action described in subsection (1) of this section without the appropriate license. Such order shall be final ten days after issuance unless the violator requests a hearing pursuant to section 81-885.25.2

Neb. Rev. Stat. § 81-885.03 (1) &(2).

The Nebraska Real Estate Commission's mission is "To protect the public interest of Nebraska citizens through the efficient and effective administration of the Nebraska Real Estate License Act …." Mission Statement, NEBRASKA REAL ESTATE COMMISSION, http://www.nrec.ne.gov (July 24, 2014).   Likewise, the Nebraska legislature enacted the License Act and declared its purposes to be as follows:

1. To protect the Public against unfair practices and to elevate the profession.
2. To protect persons dealing in the Real Estate either as seller or buyer and to maintain dignity in the profession.
3. Purpose of the Real Estate License Law is to license all brokers and salesmen to insure clean competition and also to assure the Public that its interests are protected and that those engaged in this business have passed an examination and know something about it.
4. Purpose is for protection of honest square dealing.
5. To place the Real Estate business on a high and fair standard and for protection of the Public against swindlers.
6. To eliminate unfair trade practices thereby protecting the public and put the Real Estate business on a higher level.
7. To control Real Estate dealers so the public will be protected.
8. To maintain a high standard of ethics and competence to carry on the Real Estate activity.
9. For the protection of the people, especially the buyer and seller of Real Estate.
10. To be sure that capable and honorable persons handle the business of the Real Estate Profession.
11. To license only trustworthy legitimate agencies and brokers.
12. To increase standards and reliability of Real Estate Dealers.
13. To avoid people being swindled to make the business a just and fair dealing.
14. To control and maintain high standards in the profession, to prevent unfair practices and eliminate unqualified brokers.
15. To license every real estate broker and salesman thereby protecting them against unlawful practices and protecting the public.
16. The purpose of the License Law is to protect the Public.
17. The purpose of the Real Estate License Law is to have fair dealing and cut out the fraud.
18. It is to put it on a more sound basis and insure moral obligations.

8

See Doc. No. 152-1, ¶ 13; Doc. No. 152-14, LB 100, 1943 Leg., Pub. Health and Misc. Subj. Committee (Neb. 1943).

In a constitutional challenge to a statute, courts recognize that "[i]f a law is susceptible of a reasonable interpretation which supports its constitutionality, the court must accord the law that meaning." Jones v. Gale, 470 F.3d 1261, 1268 (8th Cir. 2006) (quoting Planned Parenthood of Minn. v. State of Minn., 910 F.2d 479, 482 (8th Cir.1990)).   Facial challenges to statutes are disfavored "as they 'often rest on speculation' and 'raise the risk of premature interpretation of statutes on the basis of factually barebones records.'" Roach v. Stouffer, 560 F.3d 860, 870 n. 5 (8th Cir. 2009) (quoting Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 450 (2008). In a facial challenge, the plaintiff "must establish that no set of circumstances exists under which the Act would be valid." United States v. Stephens, 594 F.3d 1033, 1037 (8th Cir. 2010).

Plaintiff alleges "that both on their face and as applied to her, the challenged laws violate her rights to Free Speech, Due Process, Equal Protection, and the Privileges or Immunities of United States Citizenship guaranteed to her under the First and Fourteenth Amendments." See Filing No. 91, ¶ 41.  Plaintiff argues that the statutes are both overbroad and vague, particularly as a person exercising common sense cannot determine the meaning of "Negotiating a Listing" or "Procuring Prospects".   She further contends that she is an advertising broker, not a real estate broker.  She uses such phrases as "Presented by Leslie Young Real Estate Advertising Services".

Plaintiff alleges that advertising these properties is protected First Amendment speech, Foresalebyowner.com v. Zinnemann, 347 F. Supp. 2d 868, 879 (E.D. Calif.

2004), and is not commercial speech. Id. at 876; *see also* Skynet Corp. v. Slattery, No. 06-cv-218, 2008 WL 924531, at *9 (D.N.H. Mar. 31, 2008) (requiring licensure for publishing FSBO ads would be "absurd").  She argues there is no evidence that the use of the words "brokered by" (which she argues were part of a Realtor.com template and nothing she added) ever mislead any members of the public.  Finally, plaintiff contends that her ads propose that there be a transaction between the reader and the seller, but not with her.  According to plaintiff, she assists the sellers with communicating information, and defendant has submitted no evidence that the use of these terms has in any way misled the public.  Plaintiff argues that her disclaimer language in the actual contracts with the sellers includes:  "THIS AGREEMENT IS FOR AN MLS ENTRY LISTING ONLY for the sole purpose of advertising. Broker does not perform real estate services outside the State of California. Broker is performing data entry into the MLS system.  NO OTHER CONTRACT, FIDUCIARY RELATIONSHIP, AND/OR OBLIGATION IS BEING CREATED HEREIN." Young Dec. Ex. 1, Filing No. 153-3, ¶ 3.

Defendant contends that plaintiff has no constitutional right to the protection she seeks.  Defendant points out that plaintiff entered into nearly thirty "listing Agreements" with Nebraska residents, and these agreements listed the plaintiff as the broker and the Nebraskans as the sellers.  *See* Affidavit of Adam Prochaska, Filing No. 152-1, §§  2, 3, Plaintiff's Responses to Defendants' First Set of Interrogatories, Filing No. 152-2, p.14 (Interrogatory No. 8); Deposition of Leslie Rae Young ("Young Deposition"), Filing No. 152-3, p.21.  Further, plaintiff helped Nebraska residents obtain Multiple Listing Service numbers and communicated with Nebraska residents.  *See* Filing No. 152-1, § 3, Young Deposition, Filing No. 152-3, p. 17: 19-21; *See* Filing No. 152-1, § 5, Email with Chad &

Suzanne Phinney, Filing No. 152-6 ("Thank you for all your help managing our home for sale."); Filing No. 152-1, § 6, Email to Linda Swanson, Filing No. 152-7 ("I have your forms. They look great.").  Plaintiff also gave some customers some advice regarding sales.  *See* Filing No. 152-1, § 7, Email to Jeff Berggren, Filing No. 152-8; *See* Filing No. 152-1, § 8, Emails with Susan Geise, Filing No. 152-9.  She also signed her regular mail communication as "Leslie Young, Broker." *See* Filing No. 152-1, § 9, Email to Mary Zimmer, Filing No. 152-10.  Plaintiff additionally gave her clients MLS numbers for Nebraska properties and made requests for changes for these customers.  The defendants argue that only licensed realtors are permitted to access Realtor.com. *See* Filing No. 152-1, §§ 3, 10, Young Deposition, Filing No. 152-3, p. 35: 10-17; Deposition of Director Greg Lemon, Filing No. 152-11 ("Lemon Deposition"), p. 43: 22-25. Defendants contend plaintiff represented herself in her agreements as broker/agent. See, e.g., Filing No. 152-1, §§ 11, 12, Property Agency Listing Agreement, Filing No. 152-12; Disclosure Regarding Real Estate Agency Relationships, Filing No. 152-13 (referring repeatedly to Plaintiff and/or eList.me as a "Broker" and "Agent").  Further, the defendants argue plaintiff is procuring prospects and being paid to do so.

The Court believes it is questionable whether the plaintiff's speech is even protected speech.  Plaintiff calls her speech "advertising activities."  The Court agrees with the defendant that this is a conduct regulation and not a speech regulation.   *See* Liberty Coins, LLC v. Goodman, 748 F.3d 682, 686 (6th Cir. 2014) (plaintiff challenged the statute on first amendment grounds prohibiting a person from "holding himself out" as a precious metal dealer and "advertising" for sales without a license, and court held

the statute was not content based, as it just regulated conduct and not speech).   The

Court stated:

> The PMDA does not burden the commercial speech rights of unlicensed
> precious metals dealers because such dealers do not have a
> constitutional right to advertise or operate an unlicensed business that is
> not in compliance with the reasonable requirements of Ohio law. Such
> dealers cannot "hold themselves out" to the public without a license,
> regardless of whether they advertise. This case does not turn on
> advertising or solicitation, it turns on whether the business in question
> holds itself out to the public, which can occur by posting a sign, placing
> goods in an open window, simply conducting business in a manner that is
> visible to the public, or otherwise making its wares available to the public.
> This Court properly applies rational basis review in concluding that the
> statute does not violate Plaintiffs' First Amendment rights.

Liberty Coins, LLC, 748 F.3d at 697.[2]   The Court agrees with the analysis set forth in

the Sixth Circuit.   Plaintiff calls herself a broker and agent on her websites and in her

listing agreements. The Nebraska statutory scheme regulates licensing, hence conduct,

but does not prohibit protected speech.    As the Sixth Circuit stated:

> The statute proscribes business conduct and economic activity, not
> speech. Without first obtaining a license from the State, a precious metals
> dealer may not have a storefront with or without signage, may not spread
> word to the public that it is open for business, may not place
> advertisements in the newspaper, and may not function as an open,
> public, and visible business.

Id. at 697.   In a similar case in the State of Vermont, the Supreme Court stated:

> The difficulty with McElroy's argument is that he has posed the wrong
> question. He is not being restrained from publishing advertisements; he is
> being restrained from publishing misleading statements about his own
> status as a broker. The statute prohibits him from holding himself out as a
> Vermont broker engaged in the real estate business without a license.

---

[2] The Court notes that it appears as though plaintiff in this case filed an amicus brief in the *Liberty Coins* case making the same argument in that case.

Office of Prof'l Reg. v. McElroy, 175 Vt. 507, 510 (Vt. 2003); Gruwell v. Ill. Dep't of Fin. & Prof'l Reg., 406 Ill. App. 3d 283 (Ill. Ct. App. 2010) (same).  As stated by the United States Supreme Court:  "the state does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of the activity." Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 456 (1978).

The Court agrees that plaintiff does not show homes in person, that she does not negotiate terms of purchase and sale, that she does not arrange or attend meetings between buyers and sellers, that she does not answer questions about properties for sale, and that she does not handle earnest money or other client funds.  However, on several occasions she has communicated with the Nebraska residents and provided services or advice.  See Filing No. 152-1, §§ 5 and 6; Filing No. 152-6 ("Thank you for all your help managing our home for sale."); Filing No. 152-7 ("I have your forms. They look great.").  She also advised one customer:

> When buyers write or call for information, most do not have agents representing them. You will want to contact the buyer quickly BEFORE THEY HIRE a local agent to represent them. This gives the seller an opportunity to sell their property without paying a commission to the buyer's broker.
>
> But there are up-to-date Agents who also use Realtor.com. This is because Realtor.com is the official website of the National Association of Realtors. If agents are telling you that you are not in your local MLS…. then they know about your property. They also know where they can look to get more information about your property. And they know how to talk to you to bring you a buyer. There is nothing to stop them from bringing you a buyer. In this case, you may not need a local MLS listing.

13

See Filing No. 152-1, § 7; Filing No. 152-8.[3]

The Court finds the plaintiff acted as an unlicensed broker in Nebraska.  The Nebraska statutory regulation is "content neutral", as it "regulate[s] people without regard to speech on any particular topic or viewpoint."  Phelps-Roper v. Koster, 713 F.3d 942, 950 (8th Cir. 2013).  The Court agrees with the defendant that "A person may list his or her own property for sale on the internet without a license. A licensed broker may list a client's property for sale on the internet. However, an unlicensed broker who describes herself as a "broker" may not list a client's property for sale on the internet or hold herself out as a "broker" without a license. See NEB. REV. STAT. §§ 81-885.01 and 81-885.02."  Filing No. 154, at 31.

For these reasons, the Court finds this case is not about the First Amendment freedom of speech.  This case is about regulating brokers of real estate transactions.  The facts as set forth herein clearly show plaintiff met the definition by her actions of acting as a real estate broker via the language she used in the listing agreements.   As such, she is subject to the regulatory scheme set forth by the Nebraska Unicameral.  Plaintiff's claim that she is not acting as a broker but is more like a newspaper is without merit.  Plaintiff represents herself as an "advertising broker" and a "listing broker," and her postings on Realtor.com have no disclaimer stating that she is not a real estate

---

[3] Plaintiff signed her direct email communication to her "customers" as "Leslie Young, Broker."; Filing No. 12-1, pp. 8, 9, 10, 11, 12, 14, 16, 18, 20, 22, 24, 26 and 27; Filing No. 12-2, pp. 3, 5, 7, 11, 13, 15, 17, 19, 21, 23, 25, and 27 (The listings include pictures and descriptions of the Nebraska properties, and they identify Plaintiff by name as an "agent," "advertising broker" and a "listing broker"); Filing No. 12-1, pp. 8, 9, 10, 11, 14, 15, 16, 18, 19, 20, 22, 23, 24, 26 and 27; Filing No. 12-2, pp. 3, 4, 5, 7, 8, 11, 12, 13, 15, 16, 17, 19, 20, 21, 23, 24, 25, and 27 (The listings encourage viewers to "Email Agent" and view "Agent's Other Listings," and to call "Leslie Young, Advertising Broker" for "Information and Showings").

agent or broker.  See Filing No. 12-1, pp. 8, 9, 10, 11, 12, 14, 16, 18, 20, 22, 24, 26 and 27; *see also* Filing No. 12-2, pp. 3, 5, 7, 11, 13, 15, 17, 19, 21, 23, 25, and 27.

The Court finds that plaintiff does in fact list herself as an "advertising broker" and an "agent" for the Nebraska real estate listings.    At the time of the issuance of the cease and desist order, plaintiff referred to herself as an "advertising broker", a "listing broker" and an "agent."  *See* Filing No. 12-1; *see also* Filing No. 12-2.  The websites further stated "Email Agent", "Presented by Leslie Young, Advertising Broker," "Agent's Other Real Estate Listings", and "Send My Question to Leslie Young, Advertising Broker (Agent)."  See Filing No. 12-1; *see also* Filing No. 12-2.  Plaintiff, because she is a California real estate broker, is permitted to list properties into the MLS database under California regulations.  However, it is then picked up by Realtor.com which operates in Nebraska.  It is then viewed by potential buyers for Nebraska property.    Further, she lists these properties in the broker only MLS database and the broker only website, Realtor.com.    The average person may not list on Realtor.com or in the MLS service. She charges a fee for her services, and provides the sellers with at least some advice and forms.[4]

The Court further finds plaintiff is a California broker, who has renamed herself an advertising broker, and who gets paid for that service.  It is true that plaintiff does not receive a percentage of the sale price as a commission, but instead she is paid a flat fee of $95.00, and her payment apparently comes from the Chicago Tribune and not the

---

[4] She testified that she provided them with a CD containing information and weblinks. See Filing No. 152-4, pp. 92-93.  When Defendants asked her to produce a copy of the CD, plaintiff was unable to produce the same, indicating that she has no way of obtaining a copy. Id. See Supplemental Affidavit of Adam Prochaska, Doc. No. 157-1, ¶ 10.

sellers.  If it was nothing more than that set of facts, that is listing the property without any representations as broker or agent or providing advice, the Court might indeed conclude that plaintiff is only in the business of advertising.  However, that is not the case.  Based on the facts of this particular case, the Court concludes that plaintiff has violated the Nebraska statutory requirements for real estate brokers. For these same reasons, the Court finds that all other claims of the plaintiff must fail.  Accordingly, the Court will enjoin plaintiff from further violating the Nebraska laws in this regard.

THEREFORE, IT IS ORDERED THAT:

1.  Plaintiff's motion for summary judgment, Filing No. 153, is denied, and her motion for hearing, Filing No. 156, is likewise denied;

2.  Defendant's motion for summary judgment, Filing No. 151, is granted.

3.   A separate judgment will be entered in accordance with this memorandum and order.

Dated this 28th day of January, 2015

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge